UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMESETTA GUY<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J. ESPINOZA, *et al*.,<br><br>　　　　Defendants. | Case No. 1:19-cv-00498-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT ALL CLAIMS AND ALL DEFENDANTS BE DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND<br><br>(ECF NO. 11)<br><br>**THIRTY (30) DAY DEADLINE** |

　　　　Plaintiff, Jamesetta Guy, is a state prisoner currently housed at the Central California Women's Facility ("CCWF"). She is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff commenced this action on April 17, 2019, by filing a Complaint alleging that the defendants' policy of housing post-operative male-to-female transgender prisoners with female-born inmates violates Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution (ECF No. 1). The Court screened the Complaint and found that the Complaint failed to establish that Plaintiff has standing to pursue this action. (ECF No. 8.) The Court provided Plaintiff with guidance regarding her claims and granted her leave to file an amended complaint. (*See id.*)

　　　　On August 16, 2019, Plaintiff filed a First Amended Complaint (ECF No. 11), again alleging that the housing of post-operative male-to-female transgender inmates with female-born inmates violates Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights. The Court

has screened the First Amended Complaint ("FAC"). For the reasons discussed below, the Court recommends that this action be dismissed with prejudice.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338,

342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

The First Amended Complaint (ECF No. 11) names the following individuals as defendants: Janel Espinoza, Warden of CCWF; Ralph Diaz, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); Kathleen Allison, Director of Adult Institutions, CDCR; and Timothy Lockwood, Director of Policy, CDCR. (ECF No. 11.) The FAC seeks to bring claims on behalf of Plaintiff Jamesetta Guy, as well as Jane Does 1-500. (*Id.*)

The FAC alleges as follows:

> CDCR has implemented policies that force female born inmates to cohabitate with prisoners who were born male but had their penises removed. Male born transgender inmates have male physiques, including height, weight, and musculature. While they have added artificial breasts and have had their penises removed, their bodies are still male. The majority of female born inmates are incarcerated for drug or theft-type offenses. The majority of male born inmates are incarcerated for violent crimes. A significant number of female born inmates are victims of domestic abuse and/or sexual abuse/violence. Most of these victims were abused by men and suffer from posttraumatic stress disorder (PTSD), or other psychological trauma. CDCR has acknowledged the potential for harm that male contact can have on a traumatized female born inmate. For example, CDCR updated its policies to prevent male staff from conducting pat down-type searches or strip searches of female born inmates.
>
> Male born transgender inmates who have had physical confrontations with female born inmates have caused injuries that would not have been as severe as with a confrontation with another female born inmate. The mentality of the male born transgender inmates is still distinctly male. This causes conflicts to arise when a male born transgender inmate is housed with female born inmates. Traumatized women are forced to hear male voices in their living spaces, see men in their living spaces (where they dress, sleep, shower, etc.), and directly interact with a roommate who is obviously male. This re-traumatizes the female born inmate and has a significant, negative impact on the mental well-being of female born inmates. Some plaintiffs experience flashbacks due to living under constant emotional distress from being housed with male born transgender inmates.
>
> CDCR had options for housing the growing male born transgender

3

> population but chose to house them among the vulnerable female born inmate population during the process of the male born transgender inmate's sexual reassignment. Valley State Prison (hereinafter, "VSP") is currently in violation of CDCR's contract with Madera County, California, by housing male prisoners within the facility.
>
> California acknowledged that transgender is a third gender that is neither male nor female in its public restroom laws. . . . CDCR's reckless disregard for the needs, safety, and overall wellbeing of female born inmates has resulted in physical, mental and emotional injuries. . . .
>
> Plaintiff Guy has been personally threatened and intimidated by the male born inmates. Plaintiff Guy has submitted her complaints to prison authorities, who have routinely denied or dismissed them. Plaintiff Guy suffered sexual violence and abuse prior to incarceration and has suffered aspects of PTSD since the male born inmates have been housed at CCWF.

(ECF No. 11 at 5-6 (paragraph numbering omitted; paragraph structure altered).)

Plaintiff seeks compensatory damages, punitive damages, and injunctive relief to prevent post-operative male-to-female transgender inmates from being housed with female-born inmates.

### III. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived her of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of

4

state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of her rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for

his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

## IV. STANDING

In order to bring an action in federal court, a plaintiff must have standing. Standing involves "'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

### A. **Constitutional Aspect of Standing**

"The constitutional aspect [of standing] inquires whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Art[icle] III by demonstrating a sufficient personal stake in the outcome." *Fleck*, 471 F.3d at 1103 (9th Cir. 2006) (internal quotations omitted; alteration in original) (quoting *Warth*, 422 U.S. at 498). To satisfy constitutional standing requirements "a plaintiff must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

Here, the FAC alleges that Plaintiff "has been personally threatened and intimidated by the male born inmates," and that she "suffered sexual violence and abuse prior to incarceration and has suffered aspects of PTSD since the male born inmates have been housed at CCWF." (ECF No. 1 at 6.) The Court finds these allegations sufficient to show that Plaintiff has suffered an injury in fact; that the injury in fact is concrete and particularized and is actual or imminent; that the injury is fairly traceable back to the alleged action of CDCR in implementing the policy Plaintiff challenges; and that the injury would likely be redressed by a decision in plaintiff's

favor. Accordingly, the Court finds Plaintiff has constitutional standing to pursue this action on her own behalf. This does not, however, mean that the harm alleged is sufficient to establish a constitutional violation, such as cruel and unusual punishment under the Eighth Amendment. That issue is addressed separately below.

### B. Prudential Aspect of Standing

The prudential limitations of standing "restrict the grounds a plaintiff may put forward in seeking to vindicate [her] personal stake." *Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1104 (9th Cir. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Under these prudential limitations, "a litigant must normally assert [her] own legal interests rather than those of third parties." *Id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)). In the context of *pro se* litigants, "courts have routinely adhered to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008). The exception to this general rule is "when statutory authorization exists permitting plaintiff to prosecute an action on behalf of others than [her]self." *Id.* at 664 n.6; *see Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ( "A litigant appearing in propria persona has no authority to represent anyone other than himself."); *see also McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966) (privilege to appear without counsel is personal to the litigant).

Here, Plaintiff is proceeding *pro se* and seeks to bring this action on behalf of both herself and fellow prisoners, Jane Does 1-500. There is not, however, any statutory authority permitting plaintiff to pursue this action on behalf of others. Accordingly, the claims Plaintiff brings on behalf of her fellow prisoners must be dismissed.

## V. QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The point of qualified immunity is to allow officials to take action 'with independence and without fear of

consequences.'" *Schwenk v. Hartford,* 204 F.3d 1187, 1198 (9th Cir. 2000) (quoting *Harlow*, 457 U.S. at 819).[1]

> Ordinarily, courts look to prior decisional law in order to determine whether the "contours of the right" have been defined at an appropriate level of specificity. This does not mean, however, that the "very action in question [must have] previously been held unlawful." Instead, qualified immunity is inappropriate where the preexisting law was sufficient to provide the defendant with "fair warning" that his conduct was unlawful.

*Id.* (quoting *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) and *United States v. Lanier*, 520 U.S. 259, 270-71 (1997); citing *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990)) (alteration in original).

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). However, "a defense of qualified immunity is not available for prospective injunctive relief." *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012); *see also Becker v. Sherman*, 2018 WL 4616281 at *7 (E.D. Cal. Sept. 25, 2018) ("[Q]ualified immunity is not available in suits for injunctive relief.").

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson*, 555 U.S. at 232.

Here, Plaintiff alleges that CDCR's policy of housing post-operative male-to-female transgender inmates with female-born inmates violates her constitutional rights. As discussed below, there is not any clearly established law determining the appropriate classification and

---

[1] In *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000), the plaintiff, a pre-operative male-to-female transgender prisoner, alleged attempted rape by a guard and sued the state prison guard and other prison officials. The Ninth Circuit held that the guard was not entitled to qualified immunity on the Eighth Amendment claims.

8

housing of transgender inmates, nor is there clearly established law that a female-born inmate has a constitutional right to not be housed with post-operative male-to-female transgender inmates. Defendants are therefore entitled to qualified immunity on Plaintiff's claims for compensatory damages and punitive damages, and these claims for relief are accordingly subject to dismissal.

Defendants are not, however, entitled to qualified immunity on Plaintiff's claim for injunctive relief. *See Pouncil*, 704 F.3d at 576 ("defense of qualified immunity is not available for prospective injunctive relief"). Accordingly, the Court will evaluate Plaintiff's claims to determine whether she has stated a cognizable claim for injunctive relief.

## VI. EVALUATION OF PLAINTIFF'S CLAIMS

Plaintiff brings a general challenge to the classification and housing of post-operative male-to-female transgender inmates, raising claims for Fourth Amendment invasion of privacy, Eighth Amendment deliberate indifference, and Fourteenth Amendment due process and equal protection. Plaintiff's claims rely on her assumptions that a post-operative male-to-female transgender inmate is not a female inmate and should not be classified as a female inmate. The Court finds it unnecessary to address or consider the validity of Plaintiff's assumptions.

### A. Classification and Housing of Post-Operative Transgender Inmates

Although "[t]he level of scrutiny applicable to classifications based on transgender status has not been determined by the United States Supreme Court," *Denegal v. Farrell*, 2016 WL 3648956 at *7 (E.D. Cal. July 8, 2016), the Court in *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995), recognized that "federal courts ought to afford appropriate deference and flexibility to state prison officials trying to manage a volatile environment"; and that "[s]uch flexibility is especially warranted in [the] fine tuning of ordinary incidents of prison life, a common subject of prisoner claims."

Under the California Code of Regulations, "[t]ransgender inmates and inmates having symptoms of gender dysphoria as identified and documented in SOMS by medical or mental health personnel within a CDCR institution shall be referred to a classification committee for a

9

determination of appropriate housing at a designated institution" Cal. Code Regs. tit. 15, § 3269. For the classification of inmates, "the classification process shall take into consideration the inmate's needs, interests and desires, his/her behavior and placement score in keeping with the Department and institution's/facility's program and security missions and public safety." Cal. Code Regs. tit. 15, § 3375; *see Schwenk*, 204 F.3d at 1201 (2000) ("[T]he term 'gender' refers to an individual's sexual identity."); *cf.* Cal. Code Regs. tit. 15, § 3375.2 ("Inmate's bisexual or homosexual orientation may require special placement.").

Although not directly on point, the decision in *Tates v. Blanas*, 2003 WL 23864868 (E.D. Cal. Mar. 11, 2003), provides some helpful guidance on the classification of transgender inmates in pretrial detention. In that case, the court addressed the classification of a pre-operative male-to-female transgender pretrial detainee. The transgender plaintiff had been classified by the defendants as a "total separation" ("T-sep") inmate. This classification, which was applied only to select gang members and transgender inmates, imposed additional burdens and restrictions that were not imposed on other inmates. The defendants contended that the classification was necessary for the safety of the transgender inmates and because no alternative classification existed. *Id.* at *9. The court rejected these justifications:

> The Jail's response is regrettable. I have no interest in micro-managing the Jail, and will extend considerable deference to reasonable decisions by Jail officials. Nevertheless, I have a duty to ensure that Plaintiff's constitutional rights are respected. Since Defendants have declined my invitation to remedy the problems voluntarily, I will order them to do make the necessary changes.
>
> Defendants can, and must, adopt a classification scheme that more appropriately addresses the special circumstances of transgender inmates. . . . Transgender inmates should be permitted to socialize with each other unless there are particular safety concerns that would create an undue risk of harm. Such determinations must be based upon facts, not phobias.
>
> Defendants need not treat every transgender inmate in the identical manner. If a particular transgender inmate is determined to be especially dangerous, Defendants could still classify that inmate as T-sep, or use shackles, so long as they would have made the same decision even if that inmate were not transgender. Likewise, transgender inmates are not immune from discipline for rules violations.

*Id.* at \*9-\*10. The court found that "[s]egregation of transgenders is not always required. Some correctional facilities choose to house transgenders with other inmates not perceived as posing an undue risk of violent or abusive behavior. Such determinations necessarily depend upon a variety of factors, including the design of the facility, whether it is adequately staffed and not overpopulated, the number of transgender inmates at the facility, and the characteristics of the general inmate population." *Id.* at \*9. The court concluded by cautioning that transgender inmates are to be treated with the same respect as other inmates:

> Transgender inmates are entitled to be treated with the same respect as other inmates. This attitude must be conveyed from the top on down. Sheriff Blanas, and senior Jail officials, must make it absolutely clear that abuse, ridicule, "faggot" jokes, and other inappropriate behavior will not be tolerated—whether by employees, trustees, or other inmates. Jail officials must take appropriate disciplinary measures if that policy is violated.

*Id.* at \*11.

Here, Plaintiff is not alleging that she is transgender, and is not challenging her own classification. Instead, she is challenging the classification and housing of other inmates—post-operative male-to-female transgender inmates—and is alleging that she should not have to be housed with those inmates. Plaintiff's challenge to the classification of other inmates with which Plaintiff is housed does not, in and of itself, state a cognizable claim for relief.

**B. Fourth Amendment Right to Privacy**

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. *Bull v. City and Cnty. of San Francisco*, 595 F.3d 964, 972 (9th Cir. 2010) (en banc). "[I]ncarcerated prisoners retain a limited right to bodily privacy." *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988). "Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Id*. However, "assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference." *Id.* at 334 (citing *Grummett v. Rushen*, 779 F.2d 491, 494–95 (9th Cir. 1985)); *see id.* at 332 (holding that the infringement of male inmates' right to privacy by allowing female officers to observe strip searches of male prisoners

11

is "reasonably related to legitimate penological interests").

Moreover, "we cannot assume from the fact that the [conditions] cause immense anguish that they therefore violate protected Fourth Amendment interests. Far from it, our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited." *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc) (declining to reach Fourth Amendment claim and instead deciding case based on Eighth Amendment grounds). On the other hand, the Ninth Circuit recently held that alleged cross-gender viewing of pre-trial detainees "in showers and toilets frequently and up close" was sufficient to state a claim under the Fourth Amendment. *See Byrd v. Maricopa Cty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017).

Here, Plaintiff does not allege facts demonstrating that she was personally subjected to cross-gender searches, cross-gender viewing in showers or toilets "frequently and up close," or any other facts that would indicate an invasion of her right to privacy. To the contrary, she alleges only that she "has been personally threatened and intimidated" by post-operative male-to-female transgender inmates. Plaintiff has accordingly failed to state a cognizable claim for violation of her Fourth Amendment right to privacy.

### C. Eighth Amendment Claim for Deliberate Indifference

"The treatment a prisoner receives in prison and the conditions under which [she] is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (citations omitted). Second, "a prison official must have a 'sufficiently culpable state of mind'" that "is one of 'deliberate indifference' to inmate health or safety." *Id*. To meet this standard, the prison official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see id.* at 847 ("A prison official may be held liable under the Eighth Amendment for denying humane conditions of

confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

### 1. Infliction of Pain

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Thus, "[a]fter incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jordan*, 986 F.2d at 1525 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)) (ellipses in original) (internal quotation marks omitted).

To determine whether a plaintiff has stated a claim for violation of the Eighth Amendment based on infliction of pain, a court must "first consider whether there is an 'infliction of pain.'" *Id.* The Court must then consider whether that infliction of pain is "'unnecessary and wanton,'" i.e., deliberately indifferent. *Id.*

In *Jordan*, 986 F.2d 1521, the Ninth Circuit examined whether a prison policy that required male guards to conduct random, nonemergency, suspicionless clothed body searches on female inmates violated the Eighth Amendment. *Id.* at 1522. The court characterized the "gravamen of the inmates' charge" as a claim that "cross-gender clothed body searches inflict great pain and suffering" on the plaintiffs, many of whom had "shocking histories of verbal, physical, and, in particular, sexual abuse" by men. *Id.* at 1525. For example, one of the plaintiffs, who had a long history of sexual abuse by men, grabbed a bar so tightly during a cross-gender clothed body search that she had to have her fingers pried loose from the bar and vomited shortly afterwards due to the severe distress the search had caused her. *Id*. at 1523. The Ninth Circuit found the evidence supported a finding that some of the plaintiffs "would suffer substantially" as a result of the cross-gender search policy, and "that the constitutional standard for a finding of 'pain'" was therefore met. *Id.* at 1526. In so finding, the Ninth Circuit distinguished the case before it from a prior case in which it had "not been presented with evidence to more than momentary discomfort caused by the search procedures":

13

> For example, in *Grummett v. Rushen*, 779 F.2d 491 (9th Cir. 1985), this court considered the constitutionality of pat searches performed by female guards on male prisoners. We concluded that the inmates had not shown sufficient evidence of pain to make out a cognizable Eighth Amendment claim. *Id.* at 493 n. 1. Nothing in *Grummett* indicates that the men had particular vulnerabilities that would cause the cross-gender clothed body searches to exacerbate symptoms of pre-existing mental conditions. Indeed, in contrast to this case, nothing in *Grummett* indicates that the male prisoners had experienced or would be likely to experience any psychological trauma as a result of the searches.

*Id.*

In *Watison v. Carter*, 668 F.3d 1108 (9th Cir. 2012), the Ninth Circuit held that the male officer's alleged thigh rubbing of the male prisoner was not objectively harmful enough to establish a violation of the male prisoner's Eighth Amendment rights. *Id.* at 1112. In so holding, the court noted that an Eighth Amendment claim may be based on either "physical or psychological" pain, but that an "inmate must objectively show that [she] was deprived of something 'sufficiently serious.'" *Id*. The Court acknowledged the holding in *Jordan* regarding cross-gender searches, noting that the finding of "serious deprivation" in *Jordan* "relied on the high probability of severe psychological injury and emotional pain and suffering from [the] searches based on inmates' shocking histories of verbal, physical, and, in particular, sexual abuse." *Id.* at 1113 (quoting *Jordan*, 986 F.2d at 1525) (internal quotation marks and ellipses omitted). The Court found the factors relied on in *Jordan* to not be present in the case before it. *Id.* In particular, the *Jordan* decision rested on "(1) the preexisting mental conditions of the female inmates, which caused them 'to react differently to [the] searches ... than would male inmates subjected to similar searches by women,' and (2) the intrusive nature of the searches." *Id.* (citing *Jordan*, 986 F.2d at 1525; *Somers*, 109 F.3d 614, 624 (9th Cir. 1997)). Neither of those factors was present in *Watison*.

Here, the FAC alleges that Plaintiff "has been personally threatened and intimidated" by post-operative male-to-female transgender inmates; that Plaintiff has submitted complaints to prison authorities who have denied or dismissed those complaints; that, prior to incarceration, Plaintiff suffered sexual violence and abuse; and that Plaintiff has suffered aspects of PTSD

since the male born inmates have been housed at CCWF. Plaintiff's allegations are insufficient to state a cognizable claim for infliction of pain in violation of the Eighth Amendment. That Plaintiff allegedly suffered past sexual violence and abuse, and has "suffered aspects of PTSD," does not transform alleged threats by other inmates who happen to be post-operative male-to-female transgender into a "serious deprivation." *See Watison*, 668 F.3d at 1113 (explaining that the holding in *Jordan* regarding cross-gender searches involved "serious deprivation" and "relied on the high probability of severe psychological injury and emotional pain and suffering from [the] searches based on inmates' shocking histories of verbal, physical, and, in particular, sexual abuse").

Moreover, Plaintiff does not have a constitutional right to be in a female-only environment, nor does she have a constitutional right to not come into contact with males. After all, male correctional officers and staff are allowed to be employed in prisons housing female inmates and to regularly come into contact with female inmates. Thus, even assuming that post-operative male-to-female transgender inmates are not "females," that Plaintiff comes into contact with these inmates, and that this contact may exacerbate Plaintiff's PTSD, does not give rise to a constitutional claim in the prison setting any more than it would if she was a member of the general public and came into such contact outside the prison setting. *Cf. Hines v. Youseff,* 914 F.3d 1218, 1226 (9th Cir.), *cert. denied sub nom. Smith v. Schwarzenegger*, 140 S. Ct. 159, 205 L. Ed. 2d 46 (2019) ("Even though Valley Fever is more common in prisons, it is important to remember that it is not unique to prisons. More than a million people freely live in the Central Valley [of California], and many of them contract Valley Fever each year.").

### 2. *Duty to Protect from Other Inmates*

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833; *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners) (citations omitted)).

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for

> prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
>
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.

*Farmer*, 511 U.S. at 834-35 (citations omitted).

A prisoner can state a § 1983 claim under the Eighth Amendment based on deliberate indifference or reckless disregard to a threat of serious harm by another inmate. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) ("A prisoner may state a section 1983 claim under the eighth and fourteenth amendments against prison officials when those officials acted with 'deliberate indifference' or 'reckless disregard' to the threat of serious harm caused by another prisoner."). However, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). Further, one inmate's threat against another inmate will not serve to impute actual knowledge of a substantial risk of harm where neither inmate has a prior history of violence. *See id.*; *see also Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998) (no notice of the risk that an inmate would sexually assault another where they had previously been housed together without incident); *Lucas v. Eagleton*, 2007 WL 2457571 at *9 (D. S.C. 2007) (a prison official's witnessing of an argument between two inmates did not put the official on notice of a risk of harm absent evidence of a propensity of violence or a "history of animosity").

Here, Plaintiff alleges only that she has been "threatened and intimidated" by post-operative male-to-female transgender inmates, and that she reported those threats to prison officials. These allegations are insufficient to state a cognizable Eighth Amendment claim for

deliberate indifference or reckless disregard to a threat of serious harm by another inmate. *See Prater*, 89 F.3d at 541 (threats alone are insufficient to impute actual knowledge of substantial risk of harm).

### D. Fourteenth Amendment Claims

#### 1. Due Process Claim

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of [her] liberty to the extent that the State may confine [her] and subject [her] to the rule of its prison system so long as the conditions do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Thus, an inmate is not guaranteed placement in any particular prison, and life in a prison that is viewed as less favorable to the prisoner "does not infringe or implicate a liberty interest of the prisoner." *Id.* Similarly, an inmate does not have a due process right to be housed with compatible inmates, and housing circumstances that are viewed as less favorable to an inmate do not implicate or infringe on the inmate's liberty interest. *See id.*; *Allen v. Figueroa*, 56 F.3d 70, at *7 (9th Cir. 1995) (unpublished disposition ) (no Eighth Amendment or Due Process right to be housed with inmate of one's choice); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (no due process right to be housed with compatible inmate); *Williams v. Reynoso*, 2015 WL 3795033 (E.D. Cal. June 17, 2015) (rejecting the plaintiff's claim that his due process rights were violated by housing him with inmates that are "inept or incongruous" and "who are uncomfortable with [the plaintiff's] gender preferences and/or sexual orientation").

Here, Plaintiff alleges that Defendants are violating her Fourteenth Amendment rights by housing her with post-operative male-to-female transgender inmates. However, that Plaintiff does not want to be housed with these inmates and that these inmates make her uncomfortable, whether it is due to the inmates' sexual reassignment, their sexual orientation, their size, their musculature, their voice, or their other personal characteristics, does not state a cognizable Fourteenth Amendment due process claim. *See ibid.*

////

////

### *2. Equal Protection Claim*

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Generally, classifications that distinguish between males and females are subject to heightened scrutiny under the Equal Protection clause and will withstand constitutional challenge only if the classification serves "important governmental objectives" and is "substantially related to achievement of those objectives." *Craig v. Boren*, 429 US. 190, 197 (1976). It is unclear, however, whether this heightened scrutiny applies in the prison context or whether, instead, a prison regulation need only be reasonably related to a legitimate penological interest in order to withstand constitutional challenge. *See Turner v. Safely*, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' [First Amendment] constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"); *Washington v. Harper*, 494 U.S. 210, 224 (1990) (expanding *Turner* to "all cases in which a prisoner asserts that a prison regulation violates the Constitution, not just those in which the prisoner invokes the First Amendment"); *Jeldness v. Pearce*, 30 F.3d 1220, 1231 (9th Cir. 1994) (recognizing that male and female prisoners were subjected to disparate treatment but declining to determine whether the plaintiff's disparate impact claim requires proof of discriminatory intent); *Greene v. Tilton*, 2012 WL 691704, *6-*7, *8-*9 (E.D. Cal. Mar. 2, 2012), *report and recommendation adopted*, 2012 WL 1130602 (E.D. Cal. Mar. 29, 2012) (recognizing that neither the Supreme Court nor the Ninth Circuit has addressed the appropriate level of scrutiny to be applied to prisoner equal protection claims based on gender, and applying *Craig* heightened scrutiny standard to evaluate gender discrimination claim); *Pitts v. Thornburgh*, 866 F.2d 1450, 1454-55 (D.C. Cir. 1989) (applying heightened scrutiny to prisoner gender-based equal protection claim and holding that Equal Protection Clause is violated where gender-based classification has "improper purpose," such as perpetuating "fixed notions concerning the roles and abilities of males and females").

To state a claim for violation of the Equal Protection Clause, a prisoner must allege facts plausibly showing that the defendants intentionally treated her differently from other

similarly situated inmates without a rational basis, *see Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001), or that the defendants intentionally discriminated against her based upon her membership in a protected class, *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (plaintiff must show "that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class"). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original).

Here, Plaintiff alleges that, to her knowledge, post-operative female-to-male transgender inmates are not being housed with male born inmates, but that post-operative male-to-female transgender inmates are being housed with female born inmates. Plaintiff has not, however, alleged facts demonstrating that this alleged distinction in housing is made for the purpose of intentionally discriminating against female-born inmates rather than for a legitimate penological purpose. Plaintiff also has not alleged any facts demonstrating that she is being treated differently from similarly situated inmates. Accordingly, Plaintiff has failed to state a cognizable claim for violation of the Equal Protection Clause.

### E. Leave to Amend the Complaint Should be Denied

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is *pro se*. *See id.* at 1130-31; *see also Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citation omitted). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. *Cato*, 70 F.3d at 1005-06.

After careful consideration, the Court finds that Plaintiff's allegations cannot establish a

plausible § 1983 claim as a matter of law and that amendment would accordingly be futile. The Court previously provided Plaintiff with guidance regarding her claims, and granted Plaintiff leave to file an amended complaint. In her amended complaint, Plaintiff has clearly stated the facts regarding the underlying conduct, and the Court finds that such conduct does not violate a constitutional right. The Court finds that further amendment would be futile.

## VII.  RECOMMENDATIONS

IT IS HEREBY RECOMMENDED that all claims and Defendants be dismissed with prejudice and without leave to amend.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 17, 2020**                    /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE